Edward F. Maluf
Joseph J. Barker
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York 10022
212.705.7000

Attorneys for Plaintiff
*The Associated Press*



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**THE ASSOCIATED PRESS,**

                    **Plaintiff,**

        **-against-**

**MOREOVER TECHNOLOGIES, INC., and**
**VERISIGN, INC.,**

                    **Defendants.**

---

07 Civ. **CIV 8699**

**COMPLAINT**

Plaintiff The Associated Press ("AP" or "the AP"), by its undersigned attorneys, for its Complaint herein alleges upon knowledge as to themselves and otherwise upon information and belief, as follows:

### NATURE OF THE ACTION

1.      This is an action for: (i) "hot news" misappropriation under New York State law; (ii) copyright infringement in violation of 17 U.S.C. §§ 101 and 501, *et seq.*; (iii) violation of 17 U.S.C. §§ 1202, *et seq.* for improper removal of copyright management information; (iv) false association and endorsement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a);

A/72243813.6

(v) trademark infringement under the laws of New York State; (vi) trespass to chattels; and (vii) a permanent injunction.

2.    AP seeks to prevent the harm it is suffering due to the willful misappropriation of and infringement of the copyright in AP's news stories and images by defendants Moreover Technologies, Inc. ("Moreover") and VeriSign, Inc. ("VeriSign") (collectively "Defendants").

3.    Defendants are reproducing, publicly displaying, caching and archiving AP's articles on Defendants' services without AP's permission.  Such conduct constitutes "hot news" misappropriation under New York State law and copyright infringement.

4.    Upon information and belief, Defendants intentionally are altering or removing AP's copyright management information that is reflected on AP's proprietary works.

5.    Defendants are also infringing upon AP's trademark by identifying and promoting the AP as a source for Defendants' services without authorization, thus creating a false association between Defendants and AP and a false endorsement of Defendants by AP. Because there is no business association between Defendants and AP, and because AP has not endorsed Defendants business or use of AP content, such conduct by Defendants leads to confusion and diminishes AP's valuable trademarks.

6.    Defendants are also trespassing on AP's chattel by using search robots or "crawlers" to retrieve information from AP's computer servers in order to display, archive, cache, store, and/or distribute AP's proprietary works.

7.    AP seeks an injunction permanently enjoining Defendants from continuing their improper and damaging conduct.

## **PARTIES**

8.      Plaintiff AP is a membership cooperative that was established in 1846. It is currently organized under the Not-For-Profit Corporation Law of the State of New York, and has its principal offices at 450 West 33rd Street, New York, NY 10001.

9.      AP is one of the oldest and largest news agencies in the world. It has 243 bureaus in 97 countries, and employs over 4,000 people. AP serves as a source of news in various languages and formats, including photos, graphics, audio and video, for more than one billion people worldwide daily.

10.      The AP services are made available to members and non-members made up of thousands of news agencies, print publications, broadcasters, web properties, mobile service providers, desktop information service providers, corporations, government bodies, associations, educational institutions and other publishers and service providers under various licensing arrangements. These members, subscribers and other licensees pay a fee to gain access to and legitimately use AP material, including breaking news reports and other AP content.

11.      Upon information and belief, Moreover is a corporation duly organized under the laws of the State of Delaware, with offices at 487 East Middlefield Road, Mountain View, CA 94043.

12.      Moreover controls and operates fee-based services, including its website located at www.moreover.com, through which it delivers to its customers, among other services, "real-time news."

3

13.    VeriSign is a corporation duly organized under the laws of the State of Delaware, with offices at 487 East Middlefield Road, Mountain View, CA 94043 (the same address as that of Moreover), and is authorized to do business in New York State.

14.    Moreover is a wholly-owned subsidiary of VeriSign. Upon information and belief, Moreover operates under the direction and behest of VeriSign. VeriSign promotes and makes Moreover's services available as part of VeriSign's content aggregation services, offered at www.verisign.com. For example, VeriSign offers Moreover's services under the name "VeriSign® Real-Time Publisher Services."

## JURISDICTION AND VENUE

15.    This Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), pursuant to 28 U.S.C. § 1332(a)(1) in that the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and pursuant to the Court's supplemental jurisdiction.

16.    Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(a)(3), 1391(b)(2), 1391(b)(3), and 1391(c).

## COMMON ALLEGATIONS

### A.    AP's Intellectual Property and Services

17.    Since its founding in 1846, the AP has striven to provide news services of the highest quality, reliability and objectivity by providing on a daily basis and across the globe news reports that are informative, accurate and balanced. It has succeeded in reaching and

4

maintaining these goals. Since the Pulitzer Prize was first awarded in 1917, the AP has earned 49 awards, more than any other news service for the categories in which it can compete.

18.    AP must invest significant time and money to create and deliver such high quality news reports. Of the 4,000 AP employees, 3,000 are journalists actively engaged in gathering news for distribution on a round-the-clock basis. As a not-for-profit news cooperative, AP pays no dividends to its owners and reinvests net income in its news operations.

19.    The investments are not limited to time and money. AP reporters and photographers often put their lives in jeopardy to gain access to and report from dangerous and unstable regions. Thirty-two AP journalists have lost their lives while gathering news since the cooperative was established. Since 2005 alone, more than 19 AP journalists have been incarcerated or otherwise detained, and at least 23 have been harassed, intimidated or beaten.

20.    Text news reports consist of the lead paragraph of the story followed by the body of the story itself. Within the news reporting industry, the lead of the story is referred to as the "lede" so as to distinguish it from an investigative lead. The lede is composed with great care so that it both encapsulates the essence of the story and engages the reader. Ledes are so important that journalism schools offer courses dedicated entirely to techniques for creating them.

21.    The editing process for text reports at AP begins with the assignment of a story to a reporter and continues until the story's distribution. It includes consultations between editor and reporter on how the assignment should be handled and how the story should be written. Reporters may be asked several times to gather additional facts and to re-draft a story before the editor is satisfied that it is as complete and well executed as possible.

5

22.     Editors then conduct additional reviews for completeness, balance and accuracy before adding a headline and releasing the story for distribution. The headlines are designed to be original to draw attention to the story. This is even more important online as consumers survey headlines before clicking to read the full news report.

23.     The editorial process also frequently includes selection of appropriate images or multimedia materials, and preparation of informational graphics or at-a-glance summaries of important story points. The editing process for images and multimedia material involves a similar investment of resources as it does for text.

24.     Access to news is a crucial focus for journalists, who must be present to the greatest extent possible at the moment when news occurs. They must travel quickly to the place where news is expected to happen, overcome any obstacles and endure any hardships or risks required for reaching a position where the event may be observed, and be equipped to record and transmit their original material immediately to an AP bureau or editing or distribution center. Such access may require exercise of great skill, ingenuity and improvisation, or in some cases resort to litigation in order to evade or overcome resistance by those in control of a news venue. Once a news report is submitted, editors must make rapid decisions on the selection, arrangement, style and presentation of the information it contains, in conformance with AP's editorial policies and The Associated Press Stylebook.

25.     Thus, AP's news reports are original works created through significant economic, professional, and personal investment and sacrifice by AP and its employees.

A/72243813.6

26.      Because AP news reports are of such high quality and reliability, potential users of these reports are prepared to pay and do pay consideration to gain legitimate access to these works.  AP licenses its news reports to a vast array of customers under a variety of licensing arrangements.  Some of these customers are U.S. newspaper and broadcast members of the AP news cooperative, others are non-U.S. news agencies and newspapers, and still others are commercial subscribers including, without limitation, search engines, online portals, online news services, online service providers of other kinds and news aggregation services that serve corporations, professional services firms and information service providers.

27.      AP provides services to its customers either on a subscription basis in exchange for consideration, or on a single transaction basis, such as for example, a license to use specific material for a one-time use and a specified purpose.  For example, and without limitation, AP provides its copyrighted and proprietary works to licensees through services known as AP NewsBriefs, AP Alerts, AP Topic Reports, AP Online and AP Hosted Custom News.  AP maintains its copyrighted and proprietary works on computer servers that it owns and operates.

28.      The additional revenue that AP receives from licensing a selection of its news text, photo, audio, video and graphics reports to commercial and other online operations is used to expand and enhance AP's newsgathering activities and the news reporting services that AP provides to all members, subscribers and other licensees.  These operations include, but are not limited to, wire services, websites, corporations, educational institutions, governments, news aggregators, and subscription-based data services, all of whom pay a fee for legitimate and authorized access to original AP content.

7

29.     AP registers its copyrights in some of its news reports and images with the U.S. Library of Congress's Copyright Office. For example, all of AP's news reports and images for August 13, 2007, which numbers in the thousands, are registered under Copyright Registration Certificate TX 6-457-664. Similarly, all of the news reports and images for August 14, 2007 are registered under Copyright Registration Certificate TX 6-457-665; all of the news reports and images for August 16, 2007 are registered under Copyright Registration Certificate TX 6-457-682; all of the news reports and images for August 20, 2007 are registered under Copyright Registration Certificate TX 6-457-678; all of the news reports and images for August 24, 2007 are registered under Copyright Registration Certificate TX 6-457-658. The respective Copyright Registration Certificates are annexed hereto as Exhibits A - E.

30.     Works that AP has not registered for copyright may be subject to copyright registration pursuant to 17 U.S.C. § 408.

31.     Works that have been created but not registered with the Copyright Office are nevertheless proprietary to AP and may not be unfairly used without AP's permission.

32.     In addition to its interests in the news reports that it prepares on a daily basis, AP also has maintained its registration in "THE ASSOCIATED PRESS" trademark, which was registered with the U.S. Patent and Trademark Office in 1945 (Reg. No. 0411547). AP has continuously used this trademark in interstate commerce since that time.

33.     AP has not licensed or otherwise authorized Defendants to use the "THE ASSOCIATED PRESS" trademark or other form of the AP name.

8

A/72243813.6

**B.    Defendants' Services and Their Infringing Conduct**

34.    Moreover claims to be the "premier provider of real-time news, current awareness and business information, pioneering the way online news is gathered, refined, categorized and delivered."

35.    VeriSign offers services that "harvest and organize massive amounts of constantly updated content and distribute it, in real time, to enterprises, web-portal developers, application developers and consumers." VeriSign refers to this offering as "VeriSign® Real-Time Publisher Services." Upon information and belief, VeriSign's services include and rely upon Moreover's services.

36.    Defendants vigorously stress the "hot news" aspect of their services. And, as Moreover pronounces in its website-based marketing materials: "For current awareness, news aggregation is far superior to traditional syndication. Why? Increasingly, critical business information appears first, and more often exclusively, on the open Internet. Because Moreover aggregates news already available on the Web, there are no hidden content access charges like those associated with syndicated news services. The result is a fixed, predictable cost structure that delivers a rapid return on investment."

37.    Specifically, upon information and belief, Defendants are accessing AP's proprietary news reports, without AP's authorization, through the use of search robots or "crawlers" that retrieve AP proprietary material and other information from AP's computer servers.

38.    Along with retrieving the AP's proprietary works, Defendants are collecting, caching and archiving those works on their servers, and ultimately selling access to those works immediately upon their publication to their paying subscribers.  As Moreover has explained, its customers pay a fee to receive, among other services, "real-time news" that it claims to "harvest [from] more than 250,000 news articles per day . . . ."  Moreover claims to deliver material, including AP proprietary content, to its subscribers "in as fast as two minutes from online publication."

39.    Moreover openly claims that AP is among the sources of its "Major News Coverage."  Thus, Defendants concede that AP proprietary works are among the "more than 250,000 news articles per day" that Moreover "harvests" in "real time."

40.    Content that AP has registered for copyright was obtained by and republished by Defendants without permission from AP.  By way of example, Moreover duplicated without change or alteration the AP news reports for August 13, 14, 16, 20 and 24, 2007 on its website, printouts of which are annexed hereto as Exhibits F - J.  For example, a review of Exhibit F shows that Moreover reproduced 6,453 AP news reports on August 13, 2007 (Ex. F), 6,467 on August 14, 2007 (Ex. G), 6,530 on August 16, 2007 (Ex. H), 6,316 on August 20, 2007 (Ex. I), and 6,484 on August 24, 2007 (Ex. J).

41.    Thus, Exhibits F - J show that Defendants are simply copying AP's proprietary material, including the headline and all or a portion of the lede, and delivering it on a real-time basis to their paying subscribers and other users.

10

42.      Upon information and belief, Defendants have similarly taken and continue to take AP proprietary content that has not been registered with the Copyright Office and are delivering it to their paying subscribers and other users.

43.      Upon information and belief, Defendants are also providing links to AP proprietary content through Internet portals and servers directly owned and controlled by Defendants, rather than directly to an AP or AP-affiliated website.  In one or more their services, Defendants deliver the entire AP article, not merely the headline and all or a portion of the lede.

44.      Upon information and belief, Defendants are storing, caching, and/or archiving the entirety of AP's proprietary content, including the articles, headlines, ledes and images, on their servers such that their subscribers and other users can gain access to illicit copies of AP's proprietary works.  Defendants are storing, caching and/or archiving AP's proprietary content on their servers without permission from AP.

45.      Upon information and belief, whether Defendants provide AP's registered or unregistered works to their subscribers, Defendants are receiving a subscription fee from their subscribers for content that includes AP proprietary material.

46.      Upon information and belief, whether Defendants provide AP's registered or unregistered works to their subscribers, Defendants are receiving advertising revenue for providing content that includes AP proprietary material.

47.      Defendants' use of AP's proprietary content is not transformative in any way.

48.      Defendants are improperly using AP's proprietary content, including articles, headlines, ledes and images, in the exact same manner and context and for the same purpose that

11

AP's members, subscribers and other licensees, who legitimately pay for AP's proprietary content, use them. In doing so, Defendants are in direct competition with AP and the services that it provides its paying members, subscribers and other licensees.

49.    Defendants have willfully infringed and continue to willfully infringe AP's copyrights and other proprietary rights in its articles, including the headlines, ledes and images.

50.    Upon information and belief, Defendants have violated AP's copyright or otherwise misappropriated AP's proprietary content hundreds if not thousands of times.

51.    Defendants' improper conduct is likely to usurp AP's business relationships and opportunities.

52.    Defendants' improper conduct is ongoing and continuous so that new AP works are potentially infringed every minute of every day within minutes of AP's proprietary content being published.

53.    Unrestricted and wide-spread conduct of the sort engaged in by Defendants will result in a substantially adverse impact on the actual and potential market for AP's services.

54.    Defendants use of AP's proprietary content is a free-ride on AP's costly efforts to gather information and create news reports, including, articles, headlines, ledes and images, that are particularly suited for online news distribution and consumption, all under well-honed editorial procedures and practices. Defendants' use of AP's proprietary content so reduces the incentive to create the proprietary works that it threatens the existence and/or quality of AP's proprietary materials and the services that AP provides to its members, subscribers and other licensees.

12

55.    In fall 2006, AP considered retaining Moreover as a vendor to provide certain content management services to the news cooperative's members.  During the course of negotiations, AP discovered that Defendants were copying AP's proprietary works from AP's members', subscribers' and other licensees' respective websites and storing, caching and archiving these works on Moreover's computer systems and distributing and displaying them through Defendants' services.

56.    Consequently, AP advised Moreover to cease from further improper conduct as to AP's proprietary works.  Defendants rejected AP's advice and intentionally continued their improper conduct.

57.    On September 11, 2007, AP, through its counsel, sent a cease-and-desist letter to both Moreover and VeriSign.  The letter demanded that Defendants cease and desist from engaging in any activity that involves the use, accessing, caching, offering or re-selling of any AP intellectual property, including but not limited to AP's proprietary content, and the AP name for promotional activities.  Defendants responded through counsel their refusal to comply and continue to intentionally infringe on AP's rights.

58.    Subsequently, AP discovered that, upon information and belief, Defendants intentionally are altering or removing AP's copyright management information from AP's proprietary works published on the websites of AP's members, subscribers and other licensees.

13

## FIRST CAUSE OF ACTION
### ("Hot News" Misappropriation)

59.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60.     The AP generates and gathers newsworthy information at a significant economic, professional and personal cost.

61.     The information that AP generates and gathers is time-sensitive.

62.     Defendants' use of the articles, headlines, ledes and images containing the information that AP generates and gathers constitutes free-riding on AP's significant and costly efforts.

63.     Defendants' use of AP's articles, headlines, ledes and images containing the information that AP generates and gathers directly competes with services offered by AP.

64.     If the Defendants are allowed to continue their free-ride on AP's significant and costly efforts, then the incentives for AP to produce news services could be substantially reduced, the result of which would jeopardize the quality, if not the existence, of AP's news services.

65.     AP's articles, including the headlines, ledes and images misappropriated by Defendants, are "hot news" and, as conceded by Defendants, are usually less than several minutes old.

66.     AP is entitled to monetary damages for Defendants' misappropriation of its "hot news" in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Copyright Infringement)

67.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68.     AP is the sole proprietor of all right, title and interest in and to the copyrights of its articles, including the headlines, ledes and images.  AP has the exclusive right to reproduce and redistribute its copyrighted work, as provided by 17 U.S.C. § 106.

69.     Accordingly, AP owns all right, title and interest in and to the numerous copyrights of the articles, including the headlines, ledes and images that Defendants have unlawfully reproduced, publicly displayed, stored, cached and/or archived.

70.     Defendants are infringing the copyrights of AP's articles, including the headlines, ledes and images, by unlawfully reproducing and publicly displaying identical copies of the articles, including the headlines, ledes and/or images in violation of the U.S. Copyright Act, 17 U.S.C. §§ 101, *et seq.*

71.     Furthermore, Defendants are infringing the copyrights of AP's articles, headlines, ledes and/or images by unlawfully reproducing, storing, caching, and/or archiving them in violation of the U.S. Copyright Act, 17 U.S.C. §§ 101, *et seq.*

72.     Defendants' infringements were and are willful, were and are executed with full knowledge of AP's copyrights, and were and are committed in conscious disregard for AP's exclusive rights in the protected texts and images.

15

73.     AP is entitled to recover Defendants' profits, or at AP's election, statutory damages pursuant to 17 U.S.C. § 504.

74.     AP is also entitled to recover costs and attorneys fees pursuant to 17 U.S.C. § 505.

## THIRD CAUSE OF ACTION
### (Removal or Alteration of Copyright Management Information)

75.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.     AP includes copyright management information, in the form of a credit line to AP, with all of its news reports.

77.     The inclusion of AP's name with all of its news reports is "copyright management information," as provided by 17 U.S.C. § 1202(c).

78.     Defendants have intentionally removed and do remove the copyright management information identifying AP as the owner of the copyright when reproducing AP's headlines, ledes and/or images in violation of 17 U.S.C. § 1202(b)(1).

79.     Defendants' removal or alteration of the copyright management information was and is willful and intentional, and was and is executed with full knowledge of AP's copyrights, and was and is in conscious disregard for AP's exclusive rights.

80.     AP is entitled to recover Defendants' profits, or at AP's election, statutory damages pursuant to 17 U.S.C. § 1203(c).

A/72243813.6

81.     AP is entitled to recover costs and attorneys' fees pursuant to 17 U.S.C.

§ 1203(b)(4) and (5).

## FOURTH CAUSE OF ACTION
### (False Association and Endorsement under Lanham Act - 15 U.S.C. § 1125(a))

82.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through

81 of this Complaint as if fully set forth herein.

83.     Defendants represent that they receive content from various news organizations,

including AP.

84.     Defendants have no license or other permission from AP to use AP's news

reports or other proprietary information.  Defendants also do not have permission from AP to

refer to AP as a source.

85.     Defendants' websites and services are available to users across the country, and

thus Defendants, *inter alia*, participate in interstate commerce.

86.     Defendants' use of the AP name in connection with Defendants' service is

intended to and does cause confusion, mistake or deception as to the source, origin or

sponsorship of Defendants' services in that the public and others are likely to wrongly believe

that Defendants' services are provided by AP, or are sponsored by, or approved by, or licensed

by, or affiliated with or in some way legitimately connected with the AP, all to its irreparable

harm.

17

87.     AP has no control over the quality of services offered by Defendants, and because of the confusion as to the source, origin or sponsorship engendered by Defendants, the valuable goodwill associated with AP is at the mercy of Defendants.

88.     Upon information and belief, despite the fact that Defendants had and have knowledge that the trademark laws of the United States protect the use of AP's association and/or endorsement, they nevertheless willfully misappropriate the AP name.

89.     Defendants' unlawful actions have caused and continue to cause unquantifiable damages to AP.

90.     The conduct of the Defendants as described herein constitutes trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a).

## FIFTH CAUSE OF ACTION
### (Trademark Infringement under State Law)

91.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 90 of this Complaint as if fully set forth herein.

92.     Defendants represent that they aggregate content from various news organizations, including AP.

93.     Defendants have no license or other permission from AP to copy or use AP's news or other proprietary information.  Defendants also do not have permission from AP to refer to AP as a source of information.

94.     Defendants' websites and content services are available to users across the country, and thus Defendants, *inter alia*, participate in interstate commerce.

18

95.      Defendants' use of the AP name in connection with Defendants' service is intended to and does cause confusion, mistake or deception as to the source, origin or sponsorship of Defendants' services in that the public and others are likely to wrongly believe that Defendants' services are provided by AP, or are sponsored by, or approved by, or licensed by, or affiliated with or in some way legitimately connected with the AP, all to its irreparable harm.

96.      The AP has no control over the quality of services offered by Defendants, and because of the confusion as to the source, origin or sponsorship engendered by Defendants, the valuable goodwill associated with AP is at the mercy of Defendants.

97.      Upon information and belief, despite the fact that Defendants had and have knowledge that the laws of the State of New York protect the use of AP's association and/or endorsement, they nevertheless willfully misappropriate the AP name.

98.      Defendants' unlawful actions have caused and continue to cause unquantifiable damages to AP.

99.      Defendants' acts and conduct complained of herein constitute false association and endorsement under the laws of the State of New York.

## SIXTH CAUSE OF ACTION
### (Trespass to Chattels)

100.      Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 99 of this Complaint as if fully set forth herein.

19

A/72243813.6

101.    Upon information and belief, Defendants place search robots or "crawlers" on servers owned and operated by AP to retrieve AP's proprietary works, which, once retrieved, are displayed, stored, cached, archived, and distributed by Defendants.

102.    Placing search robots or "crawlers" on AP's servers, without permission, to retrieve AP's proprietary works constitutes a trespass to AP's property.

103.    The use of search robots or "crawlers" could consume a significant portion of the capacity of AP's computer systems and impair the operation of AP's servers and website.

104.    Defendants' actions are undertaken intentionally, with wanton or reckless disregard for Plaintiff's rights, warranting the imposition of punitive damages. Defendants' actions are ongoing and continuous.

105.    Defendants' actions have damaged AP in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Permanent Injunction)

106.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 105 of this Complaint as if fully set forth herein.

107.    Defendants' deliberate and continuous misappropriation of AP's "hot news" has greatly and irreparably damaged AP, and will continue to damage AP greatly and irreparably unless Defendants are enjoined by this Court. AP cannot be adequately compensated for these actual and threatened injuries by monetary damages alone.

108.    Defendants' deliberate and continuous infringement of AP's copyrights has greatly and irreparably damaged AP, and will continue to damage AP greatly and irreparably

20

unless Defendants are enjoined by this Court. AP cannot be adequately compensated for these actual and threatened injuries by monetary damages alone.

109.     Defendants' deliberate and continuous removal of AP's copyright management information has greatly and irreparably damaged AP, and will continue to damage AP greatly and irreparably unless Defendants are enjoined by this Court. AP cannot be adequately compensated for these actual and threatened injuries by monetary damages alone.

110.     Defendants' deliberate and continuous false association with and endorsement by AP has greatly and irreparably damaged AP, and will continue to damage AP greatly and irreparably unless Defendants are enjoined by this Court. AP cannot be adequately compensated for these actual and threatened injuries by monetary damages alone.

111.     Defendants' deliberate and continuous trespasses onto AP's computer servers have greatly and irreparably damaged AP and will continue to damage AP greatly and irreparably unless Defendants are enjoined by this Court. AP cannot be adequately compensated for these actual and threatened injuries by monetary damages alone.

112.     In the absence of injunctive relief, therefore, AP will have no adequate remedy at law. Accordingly, AP is entitled to a permanent injunction.

WHEREFORE, Plaintiff prays for judgment from this Court as follows:

A.     That Defendants be permanently enjoined from misappropriating AP's proprietary "hot news" content;

21

A/72243813.6

B.    That Defendants be permanently enjoined from infringing AP's copyrights pursuant to 17 U.S.C. § 502;

C.    That Defendants be permanently enjoined from removing AP's copyright management information pursuant to 17 U.S.C. § 1202;

D.    That Defendants be permanently enjoined from infringing AP's trademarks by creating a false association with and endorsement by AP;

E.    That Defendants be permanently enjoined from trespassing upon AP's computer servers;

F.    That Defendants be ordered to delete all copyrighted materials owned by AP from computers under Defendants' control;

G.    That AP be awarded damages, including punitive damages, and Defendants' profits in an amount to be determined at trial;

H.    That Defendants be ordered to pay AP's costs incurred herein including reasonable attorney's fees;

I.    That trebling of damages be ascertained for all damages that may be so trebled under 17 U.S.C. § 505;

J.    That Defendants be ordered to file with this court within 30 days after the entry of final judgment a written statement, under oath, setting forth in detail the manner in which they have complied with the order; and

22

      K.     That such other and further relief be awarded to Plaintiff which this Court deems just, proper and equitable.

Dated: New York, New York
       October 9, 2007

                    BINGHAM McCUTCHEN LLP


                    By: _____
                       Edward F. Maluf
                       Joseph J. Barker
                    399 Park Avenue
                    New York, New York 10022
                    212.705.7000

                    Attorneys for Plaintiff
                    *The Associated Press*

A/72243813.6