UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE ASSOCIATED PRESS,

                     Plaintiff,

      v.

MOREOVER TECHNOLOGIES, INC., and
VERISIGN, INC.,

                Defendants.

07 CIV 8699 (GBD)

---

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

– and –

777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017
(213) 243-4000

*Counsel for Defendants*
*VeriSign, Inc., and Moreover Technologies, Inc.*

November 7, 2007

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................1

BRIEF BACKGROUND ...............................................................................3

ARGUMENT ..............................................................................................5

I.    THE COMPLAINT REVEALS ON ITS FACE THAT AP'S COPYRIGHT
      CLAIM IS BARRED UNDER THE FAIR USE DOCTRINE ..........................5

II.   AP'S COPYRIGHT CLAIM FAILS BECAUSE IT DOES NOT
      ADEQUATELY IDENTIFY THE COPYRIGHTS AT ISSUE OR  THE
      PURPORTED WRONGFUL ACTS ............................................................8

III.  AP'S "HOT NEWS" MISAPPROPRIATION CLAIM IS PREEMPTED  BY
      FEDERAL COPYRIGHT LAW...................................................................10

      A.    The Misappropriation Claim Is Preempted Because The Alleged
            Copyright And Misappropriation Claims Are Identical. ......................12

      B.    The Claim Is Insufficient Because AP Cannot Plead That Defendants
            Misappropriated Time-Sensitive Facts, Having Instead Pled That
            Defendants Copied AP's Already Published Copyrighted Expression. ...............15

      C.    The Claim Is Insufficient Because AP's Allegations Establish That
            There Is No Free-Riding On, Nor Any Direct Competitive Threat To,
            AP's Primary Business. ...............................................................17

IV.   AP'S CLAIM FOR THE IMPROPER REMOVAL OF COPYRIGHT
      MANAGEMENT INFORMATION FAILS TO ALLEGE NECESSARY
      ELEMENTS..........................................................................................19

V.    AP'S CLAIMS OF FALSE ASSOCIATION AND ENDORSEMENT FAIL
      BECAUSE THE ALLEGED TRADEMARK IS USED PROPERLY TO
      IDENTIFY AN ASPECT OF THE MOREOVER SEARCH SERVICE........................21

VI.   AP'S CLAIM FOR TRESPASS TO CHATTELS FAILS TO ALLEGE THE
      REQUISITE ELEMENT OF ACTUAL INJURY............................................22

VII.  A PERMANENT INJUNCTION IS AN EQUITABLE REMEDY, NOT A
      CLAIM FOR RELIEF ............................................................................23

VIII. AP'S COMPLAINT DOES NOT ASSERT SUFFICIENT ALLEGATIONS
      AGAINST VERISIGN AS A SEPARATE PARTY .........................................24

CONCLUSION...........................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Air Brake Sys., Inc. v. Mineta,*
    202 F. Supp. 2d 705 (E.D. Mich. 2002)..........................................................................23

*Airframe Sys., Inc. v. L-3 Comm. Corp.,*
    No. 05-CV-7638, 2006 WL 2588016 (S.D.N.Y. Sept. 6, 2006)........................................9

*Alabama v. U.S. Army Corps of Engineers,*
    424 F.3d 1117 (11th Cir. 2005) ......................................................................................23

*In re Alstom SA Securities Litig.,*
    406 F. Supp. 2d 402 (S.D.N.Y. 2005)...............................................................................5

*Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.,*
    155 F.3d 59 (2d Cir. 1998)................................................................................................5

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
    448 F.3d 605 (2d Cir. 2006)..........................................................................................7, 8

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,*
    373 F.3d 296 (2d Cir. 2004)...........................................................................................13

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994)......................................................................................................5, 6

*Car-Freshner Corp. v. S.C. Johnson & Sons, Inc.,*
    70 F.3d 267 (2d Cir. 1995).............................................................................................21

*Cheney Bros. v. Doris Silk Corporation,*
    35 F.2d 279 (2d Cir. 1929).............................................................................................15

*Cleveland v. Waste Mgmt of Alameda County, Inc.,*
    No. C-97-4348, 1999 WL 66518 (N.D. Cal. Feb. 1, 1999) .............................................23

*Conley v. Gibson,*
    355 U.S. 41 (1957)..........................................................................................................24

*Davis v. Passman,*
    442 U.S. 228 (1979)........................................................................................................24

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005) ................................................................................................24

*G. Ricordi & Co. v. Haendler,*
    194 F.2d 914 (2d Cir. 1952) ...................................................................................15

*Gannett Satellite Info. Network, Inc. v. Rock Valley Community Press, Inc.,*
    No. 93-C-20244, 1994 WL 606171 (N.D. Ill. Oct. 24, 1994) ...........................12, 14, 16

*Gordon v. Nextel Comm. and Mullen Adver., Inc.,*
    345 F.3d 922 (6th Cir. 2003) ..................................................................................20

*Gryl ex. rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC,*
    298 F.3d 136 (2d Cir. 2002) .................................................................................4, 5

*Harper & Row Publishers, Inc. v. Nation Enterps.,*
    723 F.2d 195 (2d Cir. 1983) ......................................................................6, 13, 14, 22

*Home & Nature, Inc. v. Sherman Specialty Co.,*
    322 F. Supp. 2d 260 (E.D.N.Y. 2004) .......................................................................9

*IQ Group v. Wiesner Publ.,*
    409 F. Supp. 2d 587 (D.N.J. 2006) ..........................................................................20

*International Audiotext Network, Inc. v. American Tel. and Tel. Co.,*
    62 F.3d 69 (2d Cir. 1995) .........................................................................................4

*International News Service v. Assoc. Press,*
    248 U.S. 215 (1918) ...............................................................................................11

*In re Jetblue Airways Corp. Privacy Litig.,*
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................................22, 23

*Kelly v. Arriba Soft Corp.,*
    77 F. Supp. 2d 1116 (C.D. Cal. 1999), *rev'd on other grounds,*
    336 F.3d 811 (9th Cir. 2003) ...............................................................................6, 19

*Kelly v. L.L. Cool J.,*
    145 F.R.D. 32 (S.D.N.Y. 1992) .................................................................................9

*Kewanee Oil Co. v. Bicron Corp.,*
    416 U.S. 470 (1974) ...............................................................................................16

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) ...................................................................................4

*Kregos v. Assoc. Press,*
  795 F. Supp. 1325 (S.D.N.Y. 1992)..................................................................22

*Lowry's Reports, Inc. v. Legg Mason, Inc.,*
  271 F. Supp. 2d 737 (D. Md. 2003) ..........................................................14, 15

*Marvullo v. Gruner & Jahr,*
  105 F. Supp. 2d 225 (S.D.N.Y. 2000)..............................................................9

*Mayer v. Wedgwood & Sons, Ltd.,*
  601 F. Supp. 1523 (S.D.N.Y. 1985)..........................................................12, 16

*McHenry v. Renne,*
  84 F.3d 1172 (9th Cir. 1996) ..........................................................................25

*Morabito v. Blum,*
  528 F. Supp. 252 (S.D.N.Y. 1981) ................................................................24

*Nat'l Basketball Assoc. v. Motorola, Inc.,*
  105 F.3d 841 (2d Cir. 1997)...........................................11, 12, 14, 15, 16, 17, 18

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,*
  166 F.3d 65 (2d Cir. 1999).............................................................................21

*Orange County Choppers, Inc. v. Olaes Enters., Inc.,*
  497 F. Supp. 2d 541 (S.D.N.Y. 2007)......................................................13, 14

*Perfect 10 v. Amazon.com,*
  487 F.3d 701 (9th Cir. 2007) ..................................................................2, 5, 6, 7, 8

*Register.com, Inc. v. Verio, Inc.,*
  356 F.3d 393 (2d Cir. 2004)............................................................................22

*Rodriguez v. Chandler,*
  641 F. Supp. 1292 (S.D.N.Y. 1986)................................................................25

*Simmons v. Abruzzo,*
  49 F.3d 83 (2d Cir. 1995)..................................................................................8

*Softel, Inc. v. Dragon Med. and Scientific Comm., Inc.,*
  No. 87 Civ. 0167, 1992 WL 168190 (S.D.N.Y. June 30, 1992).......................14

*Ticketmaster Corp. v. Tickets.Com, Inc.,*
  No. CV 99-7654, 2000 WL 525390 (C.D. Cal. Mar. 27, 2000) .........................7

*Titan Sports, Inc. v. Turner Broadcasting Systems, Inc.*,
    981 F. Supp. 65 (D. Conn. 1997)............................................................................13

*Weight Watchers Int'l, Inc. v. Stouffer Corp.*,
    744 F. Supp. 1259 (S.D.N.Y. 1990)........................................................................22

*York v. Ass'n of Bar of City of New York*,
    286 F.3d 122 (2d Cir. 2002)......................................................................................5

## STATE CASES

*James v. Delilah Films, Inc.*,
    544 N.Y.S. 2d 447 (1989)........................................................................................11

*Kronos, Inc. v. AVX Corp.*,
    81 N.Y.2d 90 (1993)...............................................................................................22

*School of Visual Arts v. Kuprewicz*,
    771 N.Y.S.2d 804 (2003).........................................................................................22

## STATUTES AND RULES

15 U.S.C. § 1115(b)(4) ...............................................................................................21

15 U.S.C. § 1125(a)(1)(A) ..........................................................................................21

17 U.S.C. § 107...........................................................................................................5

17 U.S.C. § 301.....................................................................................................11, 16

17 U.S.C. § 1202(b) ..............................................................................................19, 20

Fed. R. Civ. P. 8(a)(2)............................................................................................8, 25

Fed. R. Civ. P. 12(b)(6)................................................................................................5

Defendants VeriSign, Inc. ("VeriSign") and Moreover Technologies, Inc. ("Moreover") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion, made pursuant to Rule 12 of the Federal Rules of Civil Procedure, to dismiss the Complaint filed by plaintiff The Associated Press ("AP").

## PRELIMINARY STATEMENT

AP is a reporting service that generates "news reports" and makes them available to the public for free over the open Internet. Defendant Moreover operates an Internet search engine that finds where news reports are located on the Internet and provides its users with links to those reports at their original source. In substance, AP's claims seek to hold Moreover liable for telling people where to find AP reports.

The lawsuit challenges the essence of the way the Internet works. It pits content providers against search engines, ignoring the truly transformational way in which search engines bring Internet users and content providers together by linking Internet users to websites. AP's obsolete understanding of the role and function of search engines and its efforts to impose fees on them has been repeatedly rejected by courts holding that search engines provide a critical service to Internet users protected under fair use law and that such linking is proper and, indeed, central to the operation of the Internet. AP's claims are without merit and contrary to consistent and well-reasoned authorities protecting the efficient and free use of the Internet.[1]

---

[1] *See infra* Section I. The far-reaching implications for the Internet of claims such as those contained in the Complaint not only have been recognized in the cases but also in the industry in direct response to AP's filing:

- "Unfortunately, an AP win here could ultimately subject the entire concept of linking on the Internet to a new legal standard . . . . If fair use becomes 'permission linking' then much of the Internet could be challenged." Rich Ord, *AP Suing Moreover Like It's 1999*, Web Pro News, Oct. 10, 2007, http://www.webpronews.com/insiderreports/2007/10/10/ ap-suing-moreover-like-its-1999.

- "This would be like requiring all authors of scholarly footnotes to get prior permissions from the publishers of the works footnoted, for hyperlinks are the Internet analogue of footnotes. If universally enforced, such a regime would in effect shut down the Internet, which is essentially a web of links, destroying its value. It would also effectively demolish the concept of Fair Use in the online digital world." Egan Orion, *AP makes the*

(Footnote Cont'd on Following Page)

The centerpiece of AP's Complaint is its claim for copyright infringement. AP claims that by providing links to the location of its articles, Moreover violates copyright law. As courts have repeatedly recognized, however, it is not a violation of the Copyright Act for an Internet search service to locate material on the Internet and provide links to it -- even if the search engine "caches" or makes copies of the material as part of the process of creating the link. These cases recognize that search engines are an important resource for the management of the Internet, "provid[ing] social benefit by incorporating an original work into a new work, namely, an electronic reference tool." *Perfect 10 v. Amazon.com*, 487 F.3d 701, 721 (9th Cir. 2007). The use of material from websites "for search engine purposes is highly transformative," precluding a finding of copyright infringement under the fair use doctrine. *Id.* at 724. The Complaint fails to allege any facts that would distinguish this case from those rejecting copyright claims against search engines and, therefore, the Complaint on its face reveals that AP's copyright claim is barred under the fair use doctrine.

AP's copyright claim is also deficient because it is fatally uncertain and lacks the required specificity. It fails to put Defendants on notice regarding what specific works are at issue and what acts purportedly constitute infringement. AP does not even identify what copyrights it asserts have been infringed. Despite vaguely asserting that "thousands" of its copyrights have been infringed, AP fails to identify any of the copyrights that are purportedly infringed in this case, other than a few works published over five days in August of this year. Similarly, AP fails adequately to allege the acts that form the basis of its claim. While AP vaguely alleges that defendants "access," "cache," and "collect" its unidentified works, it does not allege with specificity the infringing acts or otherwise distinguish AP's claims from those

---

(Footnote Cont'd From Previous Page)

     *case that it doesn't get the Internet*, TheInquirer.net, Oct. 17, 2007, http://www.theinquirer.net/gb/inquirer/news/2007/10/14/ap-makes-case-doesn-internet.

- "If the AP succeeds in its lawsuit against Moreover.com, the results for Google, Ask Jeeves and other indexing sites could be catastrophic. Would you like to use the Net if there were no indexes like Google?" Steve Gold, *The Associated Press stirs up a hornet's nest*, IT Pro Portal, Nov. 2, 2007, http://securityblog.itproportal.com/?p=1103.

that have been made against other search engines but found lacking under the fair use doctrine. AP's additional allegation that Moreover made "identical copies of the articles" is contradicted by the pages that AP attaches to the Complaint as "examples" of such infringement. Further, copies made as part of the search process are a protected fair use. Such vague and contradictory pleading renders AP's copyright claim insufficient as a matter of law.

AP's remaining claims fare no better. AP's "hot news" misappropriation claim is nothing other than a duplicate of its copyright claim, and therefore is preempted by the Copyright Act. AP's "false association" trademark claims fail for the simple reason that it is not a trademark violation to use a mark to describe accurately an aspect of a good or service. Moreover accurately states that one source of news for which it returns results is AP. The claims for purported removal of "copyright management information" and trespass to chattels fail because AP cannot allege the required elements of those claims, and the purported "permanent injunction" cause of action is not a cognizable claim at all.

Finally, AP's claims against defendant VeriSign, the parent company to defendant Moreover, fail because AP does not allege any wrongdoing separately against VeriSign. A plaintiff cannot merely include the name of a defendant in the caption and lump that defendant together with another party without including allegations asserting why that defendant is potentially liable. AP's Complaint contains no allegations against VeriSign for which relief could be granted.

AP's Complaint thus should be dismissed in its entirety.

## **BRIEF BACKGROUND**

Moreover is a "premier provider" of a customizable news and "blogs" search engine, designed to allow large, sophisticated companies to locate news available on the Internet relevant to their businesses. (*See* Compl. ¶ 34 (quoting http://w.moreover.com/site/products/overview.

html (attached hereto as Exhibit A)).)[2]  The Moreover search engine allows businesses to locate, organize, and access news important to their needs from the massive amounts of constantly updated public information that is posted "on the open Internet" and "already available on the Web." (Compl. ¶ 36 (quoting http://w.moreover.com/site/content/overview.html (attached hereto as Exhibit B)).)  Moreover searches more than just AP reports; the searches include results from "an editorially ranked list of more than 25,000 online news sources," such as the New York Times and Wall Street Journal, and from over 7,000,000 blogs.  (*See* Defs.' Exs. A & B.)

The Moreover search engine provides users with lists of potentially interesting articles and links to the articles at their original source.  (*See, e.g.*, Compl., Exs. F-J.)  These search lists identify the title of the article, the source of the article (*e.g.*, from "AP"), and, consistent with Internet search conventions, the first few lines of the article, up to the first 255 characters (*i.e.*, not 255 words).  (*Id.*)  If the article is of interest, the user can click on the link for the article, which takes the user to the original news or content source on the Internet, like other search engines.  (*See, e.g.*, Defs.' Ex. A ("Moreover intelligently categorizes news content across 500 topics to provide <u>targeted browsing</u>." (emphasis added)).)

In effect, Moreover allows businesses to locate news provided by AP and other organizations and delivers customers for the news reports to the doorstep of the news publisher. (*Id.*)  AP itself has recognized that the Moreover search service is not a substitute for AP's product but a complement to it.  Moreover has been in business since 1999, and AP repeatedly has expressed an interest in becoming a customer of Moreover for its service, including through procurement discussions dating back more than a year ago.  (Compl. ¶ 55.)  It was only after

---

[2]  Defendants have attached to this memorandum some of the Moreover webpages that AP's Complaint references.  Such pages are proper for consideration on a motion to dismiss, because AP's allegations rely upon the "terms and effect" of these materials.  *Gryl ex. rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC*, 298 F.3d 136, 140 (2d Cir. 2002).  *See also Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (courts may take documents that are "integral to the complaint . . . into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment") (quotation marks omitted); *Knievel v. ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005) (considering website contents attached to motion to dismiss under "incorporation by reference" doctrine).

those negotiations broke down over pricing that AP filed this lawsuit.

**ARGUMENT**

A complaint fails under Federal Rule of Civil Procedure 12(b)(6) if it does not "allege facts which, assumed to be true, confer a judicially cognizable right of action." *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002). The Court may consider "facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as matters of which judicial notice may be taken." *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir. 1998). In addition, courts may consider documents referenced or "whose terms and effect are relied upon by the plaintiff in drafting the complaint." *Shire Pharms. Group*, 298 F.3d at 140. *See also In re Alstom SA Securities Litig.*, 406 F. Supp. 2d 402, 408 (S.D.N.Y. 2005) (considering "several articles, reports, press releases and . . . SEC filings" cited but not included by plaintiff in the complaint).

**I.      THE COMPLAINT REVEALS ON ITS FACE THAT AP'S COPYRIGHT CLAIM IS BARRED UNDER THE FAIR USE DOCTRINE**

The Moreover search engine is designed to facilitate factual research and access to news reporting that is "already available" to the public "on the open Internet." (*See* Compl. ¶¶ 34, 36.) Moreover's service is not a substitute for those news stories. Instead, Moreover complements it, as AP recognized when it sought to become a user of the service as Moreover's customer. (*Id.* ¶ 55.) The Moreover search engine allows more efficient access to the news reports <u>at their original source</u>, through links from the search engine to the original website.

As has been repeatedly recognized, Internet search tools such as those provided by Moreover are protected under the statutory doctrine of "fair use," *see* 17 U.S.C. § 107, because, among other reasons, they are highly "transformative." As explained in the leading case of *Perfect 10 v. Amazon.com*, which considered the popular Google search engine:

> A work is "transformative" when the new work does not "merely supersede the objects of the original creation" but rather "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." [*Campbell v. Acuff-Rose Music, Inc.* 510 U.S. 569, 579 (1994)]

- 5 -

(internal quotation and alteration omitted). Conversely, if the new work "supersede[s] the use of the original," the use is likely not a fair use. [*Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 550-51 (1985)] (internal quotation omitted).

*  *  *

Although an image may have been created originally to serve an entertainment, aesthetic, or informative function, a search engine transforms the image into a pointer directing a user to a source of information. Just as a "parody has an obvious claim to transformative value" because "it can provide social benefit, by shedding light on an earlier work, and, in the process, creating a new one," [*Campbell,* 510 U.S. at 579], a search engine provides social benefit by incorporating an original work into a new work, namely, an electronic reference tool. Indeed, a search engine may be more transformative than a parody because a search engine provides an entirely new use for the original work, while a parody typically has the same entertainment purpose as the original work.

*  *  *

We conclude that the significantly transformative nature of Google's search engine, particularly in light of its public benefit, outweighs Google's superseding and commercial uses of the thumbnails in this case. In reaching this conclusion, we note the importance of analyzing fair use flexibly in light of new circumstances.

*Amazon.com,* 487 F.3d at 701, 720, 721, 723 (9th Cir. 2007) (emphasis added).

Accordingly, in the world of the Internet, it is not a copyright infringement to provide a search engine service to direct users to the location of works of interest, because search engines are transformative by nature. In *Kelly v. Arriba Soft*, 336 F.3d 811 (9th Cir. 2003), a photographer brought a copyright infringement action against Arriba, the operator of a search engine for Internet images. The Arriba service used a computer program to "crawl" the Internet to copy original photographic works into its database, organized those works so that they could be searched, and then displayed "thumbnail" versions of the images in response to search queries. *Id.* at 815. A user who clicked on one of the thumbnails would be linked to the full-size image located on the photographer's web server. *Id.* at 816.

In considering the issues, the court determined that, while the plaintiff's original work was "artistic expression," Arriba's use of those images as part of its search engine services "improve[d] access to information on the internet . . . ." *Id.* at 819. The court thus concluded that Arriba's "use of [plaintiff's] images promotes the goals of the Copyright Act and the fair use

- 6 -

exception," because copying works to incorporate into a search service and then displaying thumbnails in response to a search request "do not supplant the need for the originals," and instead "benefit the public by enhancing information gathering techniques on the internet." *Id.* at 820 (emphasis added).[3]

Moreover's service is indistinguishable in relevant respects from those at issue in *Arriba Soft* and *Amazon.com*. Like the Arriba and Google search engines, the Moreover search engine locates information on publicly available websites and uses such information to "point" or "direct" its clients to the original source of information. Indeed, Moreover's "pointer" -- when compared to thumbnails that are condensed images of the original author's <u>entire</u> work -- intrudes less because, at most, it publishes only a very small fraction of AP's larger work (*i.e.*, the headline and up to the first 255 characters of the news article). *See Amazon.com*, 487 F.3d at 721 ("The fact that Google incorporates the entire Perfect 10 image into the search engine results does not diminish the transformative nature of Google's use."); *Arriba Soft*, 336 F.3d at 821 ("It was necessary for Arriba to copy the entire image to allow users to recognize the image and decide whether to pursue more information about the image or the originating web site."); *accord Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 611 (2d Cir. 2006) (citing *Arriba Soft* and concluding that finding of "transformative use" was "strengthened" where the defendant "significantly reduced the size of the reproductions" at issue).

Like other search engines, the Moreover service provides a substantial public benefit in the form of enhanced search techniques. The Moreover service searches, organizes, and indexes information from millions of blogs and over 25,000 news sources. Moreover thus allows meaningful and intelligent reference to these various sources, providing substantial efficiencies

---

[3]  Other courts have also upheld the propriety of linking by search engines to content created by others. *E.g.*, *Ticketmaster Corp. v. Tickets.Com, Inc.*, No. CV 99-7654, 2000 WL 525390, *2 (C.D. Cal. Mar. 27, 2000) ("[H]yperlinking does not itself involve a violation of the Copyright Act . . . since no copying is involved. The customer is automatically transferred to the particular genuine web page of the original author. There is no deception in what is happening. This is analogous to using a library's card index to get reference to particular items, albeit faster and more efficiently.").

to its users.  Absent search facilities like those provided by Moreover, it would be impracticable to access available news from such a breadth of sources spread across the Internet.

All search engines "access," "cache," and "collect" materials.  AP alleges no facts that would distinguish this case from those holding that search engines do not infringe the copyrights in the materials to which they provide "access" and which necessarily are "cached" as part of the process of using a search engine.  *E.g.*, *Amazon.com*, 487 F.3d at 711 ("Google . . . automatically accesses thousands of websites . . . and indexes them within a database stored on Google's computers."); *id.* at 712 ("Google also stores webpage content in its cache.").[4]

The transformative nature of Moreover's search engine is conceded by AP itself, who sought to become Moreover's customer.  (Compl. ¶ 55.)  The only reason AP could have for acquiring Moreover's search service was to obtain a service different from and complementary to AP's reporting services.  Such transformative uses are protected under the fair use doctrine. *See Bill Graham Archives*, 448 F.3d at 614-15 ("[A] copyright holder cannot prevent others from entering fair use markets merely by developing or licensing a market for . . . transformative uses of its own creative work." (internal quotation marks omitted)).

Therefore, as pled, AP's copyright claim is insufficient as a matter of law and should be dismissed.

## II.  AP'S COPYRIGHT CLAIM FAILS BECAUSE IT DOES NOT ADEQUATELY IDENTIFY THE COPYRIGHTS AT ISSUE OR THE PURPORTED WRONGFUL ACTS

A complaint must give "fair notice" of the claim asserted to allow a defendant "to answer and prepare for trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995); Fed. R. Civ. P. 8(a)(2).  In the context of a copyright infringement claim, "fair notice" requires that a plaintiff

---

[4]  To the extent that AP's copyright claim is based on allegations that the Moreover service makes a copy of entire AP articles to use them to create its search engine, such a use does not constitute infringement either.  *See Arriba Soft*, 336 F.3d at 818-22 (finding no infringement where computer crawlers copied entire work in the process of creating search engine results); *Amazon.com*, 487 F.3d at 711, 721 (noting that Google's image search engine provides results in the form of entire images copied from the source website and stored on Google's servers and that this "does not diminish the transformative nature of Google's use").

allege:  (1) which specific original works are the subject of the claim; (2) that it owns the

copyright in the works; (3) that the copyrights have been registered in accordance with the

statute; and (4) which acts during what time allegedly constitute the infringement.  *Airframe Sys.,

Inc. v. L-3 Comm. Corp.*, No. 05-CV-7638, 2006 WL 2588016, *3 (S.D.N.Y. Sept. 6, 2006)

(Daniels, J.) (granting motion to dismiss complaint alleging copyright infringement).  *See also

Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) (a properly pled

copyright infringement claim must identify the "particular infringing acts . . . with some

specificity.  Broad sweeping allegations of infringement do not comply with Rule 8." (quoting

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 n.3 (S.D.N.Y. 1992)).  AP has failed to meet these

requirements.

It is impossible from the face of the Complaint to determine which copyrights AP asserts

have been infringed or the alleged scope of the resulting liability.  AP broadly claims that

Defendants have violated its copyrights up to "thousands" of times.  (Compl. ¶ 50.)  Yet, with

the exception of a few copyright registrations covering five days in August 2007, AP fails to

identify the copyrights or articles it claims are at issue.  This is insufficient notice of the

purported copyright claim.  As explained in *Home & Nature, Inc. v. Sherman Specialty Co.*, 322

F. Supp. 2d 260, 266 (E.D.N.Y. 2004), a complaint properly identifies that a document is

protected by a copyright by "listing the copyright registration numbers issued by the United

States that correspond to each of its copyrighted materials, annexing copies of the United States

Certificates of Copyright Registrations, and stating that the defendant has infringed upon one of

more of these copyrights."  AP fails to meet these requirements.

Similarly, AP's Complaint fails to identify the conduct that allegedly constitutes

infringement.  AP asserts that it holds copyrights in "some" of its "news reports and images"

(Compl. ¶¶ 29-30), and generally alleges that Defendants are infringing the copyrights in these

reports and images by unlawfully "reproducing, and publicly displaying identical copies of the

articles, including the headlines, ledes and/or images" and "storing, caching, and/or archiving"

such articles.  (Compl. ¶¶ 70-71 (emphasis added).)  AP states that "examples" of the

infringement are attached as exhibits to the Complaint.  (*Id.* at ¶ 40 ("By way of example, Moreover duplicated without change or alteration" AP reports excerpted in Exhibits F-J to the Complaint (emphasis added)).)  But, the documents that AP attaches to its Complaint as purported "examples" of the alleged infringements contradict those allegations, rendering the Complaint improperly vague and uncertain.

Specifically, Exhibits F-J to the Complaint are not "identical" copies of AP articles; instead, they are a list of articles available on the open Internet with the first 255 characters of each article included for context.  Thus, on the one hand, AP's Complaint alleges that the infringement for which it seeks redress is alleged displaying of "identical copies" of AP articles, and, on the other hand, AP attaches "examples" that clearly are not identical copies of any AP article.  The contradictory nature of AP's Complaint leaves Defendants uncertain as to what conduct forms the basis of AP's copyright claim.

Furthermore, other conduct alleged in the Complaint is indistinguishable from that protected under the fair use doctrine.  Such allegations concerning Defendants' conduct are uncertain or allege nothing more than acts that are part of the process of using a search engine and which have been found to give rise to a fair use defense.  *See supra* Section I (discussing cases that analyze search engine services).

Without knowing what acts AP is complaining about, Defendants are improperly disadvantaged in preparing a defense to the action.  AP's copyright infringement claim thus should be dismissed as contradictory and uncertain.

### III. AP'S "HOT NEWS" MISAPPROPRIATION CLAIM IS PREEMPTED BY FEDERAL COPYRIGHT LAW

AP's allegations of copyright infringement and misappropriation are identical.  Both claims are based on purported infringements of material in which AP claims a copyright, and both are based on the same alleged acts of copying and re-publication.  Nevertheless, AP also asserts a cause of action for so-called "hot news" misappropriation under New York law.  AP's

misappropriation claim is preempted by the Copyright Act. For similar reasons, the claim also fails to plead elements necessary to state a cause of action for misappropriation.

When Congress revised the copyright laws in 1976, it expressly preempted all state claims equivalent to those within the scope of federal copyright. *See* 17 U.S.C. § 301. Under Section 301, a state law claim therefore is preempted when: (1) the work is of the type protected by the copyright laws; and (2) the state law claims seek to vindicate rights that are equivalent to a right protected by federal copyright law. *Id.*; *Nat'l Basketball Assoc. v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997).

Here, the basis for AP's misappropriation claim is precisely the same set of facts alleged for its copyright infringement claim. Indeed, AP describes its "hot news" and copyright claims identically: "Defendants are reproducing, publicly displaying, caching and archiving AP's articles on Defendants' services without AP's permission. Such conduct constitutes 'hot news' misappropriation under New York State law and copyright infringement." (Compl. ¶ 3 (emphasis added).) By including its misappropriation claim, AP is attempting merely to recast its copyright claim under a different name. This is improper. The cases are clear that such a state law claim is preempted under the Copyright Act. *See James v. Delilah Films, Inc.*, 544 N.Y.S. 2d 447, 450 (1989) ("[P]laintiffs may not by miscasting their causes of action, secure the equivalent of copyright protection under the guise of State law." (internal quotation marks and citations omitted)).

A limited exception to preemption sometimes has been found for "hot news" misappropriation claims of the kind recognized in *International News Service v. Associated Press*, 248 U.S. 215 (1918) ("*INS*"), where a news service "pirated" its competitor's time-sensitive news by lifting factual information from the competitor's news sources "before publication," *id.* at 231, and then "misappropriated" and sold the information "as its own" to its newspapers. *Id.* at 242. *INS* did not involve the taking or publication of copyrighted expression, *id.* at 233 ("Complainant's news matter is not copyrighted."); *id.* at 249 (Brandeis, J., dissenting) ("No question of statutory copyright is involved."), and the claimant in *INS* had no alternative

remedy for the misappropriation.[5] *Id.* at 262 (Brandeis, J., dissenting) ("[T]o give relief against [the actions at issue] would involve more than the application of existing rules of law to new facts. It would require the making of a new rule in analogy to existing ones.").

The exception to preemption for "hot news" misappropriation claims is "narrow," *see Motorola*, 105 F.3d at 843, rarely found to apply, and plainly does not exist here. To distinguish such a "hot news" claim from a copyright claim requires that a plaintiff plead qualitatively "extra elements" that would demonstrate: (1) the misappropriation of time-sensitive "factual" material not protected by copyright; (2) free-riding upon the claimant's efforts to collect those facts; and (3) a direct competitive threat to the "very existence" of the claimant's "primary business" or market. *See id.* at 853-54. *See also Mayer v. Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985) ("[These] extra element[s] . . . [must] change[] the nature of the action so that it is <u>qualitatively</u> different from a copyright infringement claim." (emphasis in original)). AP does not and cannot establish any of these "extra elements." *See Motorola*, 105 F.3d at 851 ("[T]he 'extra element' test should not be applied so as to allow state claims to survive preemption easily.").

### A. The Misappropriation Claim Is Preempted Because The Alleged Copyright And Misappropriation Claims Are Identical.

AP's state law misappropriation claim is preempted on the grounds that the only activity in which Moreover is alleged to have engaged is the copying and publication of AP's original copyrighted works. "It is axiomatic that unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by the

---

[5] The very purpose of the "hot news" preemption exception was:

> to provide an equitable remedy to protect one news agency's quasi-property interest in factual news from unauthorized use by a competitor where no alternative remedy was available. Such is not the case here where plaintiff has as potential remedies at the very least copyright claims and Lanham Act claims . . . .

*Gannett Satellite Info. Network, Inc. v. Rock Valley Community Press, Inc.*, No. 93-C-20244, 1994 WL 606171, *5 (N.D. Ill. Oct. 24, 1994). *See also Motorola*, 105 F.3d at 853 (noting that the purpose was to assure that news-gatherers could protect "property rights in the news they pay to collect" where no other incentives or protections exist).

Copyright Act." *Orange County Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 556 (S.D.N.Y. 2007) (internal quotation marks and edits omitted). Here, the allegations of copyright infringement and misappropriation are identical. (*See* Compl. ¶ 3.) As a result, AP's claims "are duplicative in substance and objective and are thus governed exclusively by the Copyright Act." *Orange County Choppers*, 497 F. Supp. 2d at 556.

By contrast to the claims in this Complaint, a valid misappropriation claim requires allegations of <u>conduct</u> distinct from alleged copyright infringement. "[A]n 'extra element' does not protect a state claim from preemption unless that extra element establishes '<u>qualitatively different conduct</u> on the part of the infringing party . . . .'" *Titan Sports, Inc. v. Turner Broadcasting Sys., Inc.*, 981 F. Supp. 65, 73 (D. Conn. 1997) (finding state claim preempted) (emphasis in original in part) (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985)). *See Harper & Row*, 723 F.2d at 201 (finding preemption of state claim where, "[i]n both cases, it is the act of unauthorized publication which causes the violation . . . . [The claim of an interest in 'exercis[ing] and enjoy[ing] the benefit' of pre-publication control] could not possibly be deemed a separate element.").

The Second Circuit determines whether a state law claim is "qualitatively different" from a claim for copyright infringement, and thus not preempted, by looking at "what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (internal quotation marks and citations omitted). AP's misappropriation claims rests upon the theory that Moreover is engaged in exact copying of AP's copyrighted work -- in the form of AP's articles, headlines, ledes and images. (Compl. ¶¶ 62-63.) Unlike the original *INS* case, AP does not allege that Moreover extracted or "lifted" and then resold certain "facts" <u>before</u> AP had published its news reports; rather, AP alleges only that Moreover copied AP's copyrighted works after they were "already available" on the "open Internet" and then displayed those works. (Compl. ¶¶ 36, 62-63.) AP's misappropriation claim thus fails to allege conduct or claims that

- 13 -

are "qualitatively different" from the act of copyright infringement -- instead, it expressly alleges

that the misappropriation consists of acts of copyright infringement. *See Softel, Inc. v. Dragon*

*Med. and Scientific Comm., Inc.,* No. 87 Civ. 0167, 1992 WL 168190, *28-29 (S.D.N.Y. June

30, 1992) (dismissing "hot news" misappropriation claim as preempted where it was "based

solely on defendants' copying of [plaintiff's] computer code"), *aff'd in relevant part,* 118 F.3d

955, 972 (2d Cir. 1997); *Orange County Choppers,* 497 F. Supp. 2d at 556 (finding claim for bad

faith misappropriation was preempted because plaintiff did not allege that defendant "breached"

any duties or "disclosed" any trade secrets).[6] *See also Motorola,* 105 F.3d at 852 (where

underlying works at issue in older misappropriation cases would be subject to copyright if

created today, such cases "would <u>have</u> to be brought as copyright cases because the [law]

affording [those works] copyright protection also preempted the state law misappropriation

cases"); *Harper & Row,* 723 F.2d at 201 (finding other state law claims preempted because "the

fact that cross-appellants pleaded additional elements of awareness and intentional interference

[with contractual relations], not part of a copyright infringement claim, goes merely to the scope

of the right; it does not establish <u>qualitatively different conduct</u> on the part of the infringing

party, nor a fundamental non-equivalence between the state and federal rights implicated"

(emphasis added)).[7]

---

[6] Courts considering *INS*-style "hot news" claims in other states have also found them preempted where they involved the copying of protected works. *Gannett Satellite Info. Network, Inc. v. Rock Valley Community Press, Inc.,* No. 93-C-20244, 1994 WL 606171, *5 (N.D. Ill. Oct. 24, 1994) (finding preemption where defendant newspaper copied and published quotations from plaintiff newspaper's already published articles); *Lowry's Reports, Inc. v. Legg Mason, Inc.,* 271 F. Supp. 2d 737, 755 (D. Md. 2003) (finding preemption where defendant's public broadcast of information already published by plaintiff "[did] not differ qualitatively from conduct that would infringe one of the exclusive rights granted by the Copyright Act" (internal quotation marks omitted)).

[7] Even though AP attempts to repackage Moreover's alleged copying of AP's original expression as "free-riding" (*see* Compl. ¶ 62 ("Defendant's use of [AP's] articles, headlines, ledes and images . . . constitutes free-riding")), this cannot disguise the fact that AP's allegation consists only of the claim that Moreover has copied and published AP's original expression, which already gives rise to AP's claim for copyright infringement. "Free-riding" is the only *Motorola* element "that constitutes a wrongful *act,*" but its allegation in this case is "indistinguishable from the right to reproduce, perform, distribute or display a work." *Lowry's Reports, Inc.,* 271 F. Supp. 2d at 756 (emphasis in original). Free-riding "may be a pejorative

(Footnote Cont'd on Following Page)

The alleged acts of copyright infringement and misappropriation consist entirely of the copying and publication of AP's copyrighted works. Therefore, AP's misappropriation claim is preempted and must be dismissed.

**B.      The Claim Is Insufficient Because AP Cannot Plead That Defendants Misappropriated Time-Sensitive Facts, Having Instead Pled That Defendants Copied AP's Already Published Copyrighted Expression.**

The Second Circuit has noted that the "hot news" claim should be "strictly confined" to the facts at issue in *INS*. *G. Ricordi & Co. v. Haendler*, 194 F.2d 914, 916 (2d Cir. 1952); *Cheney Bros. v. Doris Silk Corporation*, 35 F.2d 279, 280 (2d Cir. 1929) ("[N]o more was covered [in *INS*] than situations substantially similar to those then at bar. The difficulties of understanding it otherwise are insuperable."). The misappropriation in *INS* consisted of a direct competitor "pirating" AP's time-sensitive news by lifting facts from sources "before publication" or from "early editions" of AP news stories that had not yet been made fully available to the public. *INS*, 248 U.S. at 231. INS then "misappropriated" this time-sensitive news by selling it "as its own" to INS-affiliated newspapers, *see id.* at 231, 239, 241, which competed directly with AP-affiliated newspapers. No copyrighted expression was taken or published by INS. *See id.* at 233. Here, AP has failed to allege facts constituting a misappropriation of "hot news" within the meaning of *INS*.

First, there is no claim that Moreover is lifting and reselling AP's factual information as distinct from copyrightable expression. Instead, AP alleges that Moreover is using its <u>original copyrighted expression</u> by collecting and displaying AP's "articles, headlines, ledes and images." (Compl. ¶¶ 62-63.) But, as the Second Circuit made clear in *Motorola*, an *INS*-style "hot news" misappropriation claim involves the alleged lifting and use of discrete <u>facts</u>, as distinct from the alleged reproduction of the copyrighted work itself. 105 F.3d at 851 ("One method by which

---

(Footnote Cont'd From Previous Page)
description of copying, but it is still copying." *Id.* (quoting Jane C. Ginsburg, *Copyright, Common Law, and Sui Generis Protection of Databases in the United States and Abroad*, 66 U. Cin. L. Rev. 151, 162 (1997)).

INS was able to use AP's news was to <u>lift facts</u> from AP news bulletins.  Another method was to <u>sell facts taken</u> from just-published east coast AP newspapers to west coast INS newspapers whose editions had yet to appear." (emphasis added, citation omitted)).  As the court explained in *Motorola*, this critical and necessary distinction between copying a work that falls within the Copyright Act and copying facts is recognized in the legislative history of Section 301 itself.  The House Report emphasizes that "state law should have the flexibility to afford a remedy (under traditional principles of equity), against a consistent pattern of unauthorized appropriation by a competitor of the <u>facts (i.e., not the literary expression)</u> constituting 'hot' news . . . ." *Motorola*, 151 F.3d at 850 (quoting H.R. Rep. No. 1476, at 132 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748) (emphasis added); *see also Mayer*, 601 F. Supp. at 1534 (noting that the "hot news" examples cited by the House Report "involve subject matter <u>other</u> than copyright, <u>specifically the facts and data</u> as opposed to their expression" (emphasis added)).

Second, unlike in *INS*, AP does not claim that Moreover has "pirated" AP's facts before they are published.  *Cf.* Restatement (Third) of Unfair Competition § 38, cmt. c (1995) (noting that "the appropriation in *INS* deprived Associated Press of any lead-time advantage, at least on the West Coast").  To the contrary, Moreover is alleged to re-publish AP's copyrighted articles only <u>after</u> AP has already voluntarily distributed them on the "open Internet."[8]  (Compl. ¶ 36.) "[T]he interest to be protected in [*INS*] was the value to the individual news agency in distributing timely, fresh 'news' [and] not some proprietary interest in the facts comprising the news."  *Gannett Satellite*, 1994 WL 606171, at *5.  Where material is quoted from a plaintiff's

---

[8]  "It is clear that no general rule of law prohibits the appropriation of a competitor's ideas, innovations, or other intangible assets once they become <u>publicly known</u>."  Restatement (Third) of Unfair Competition § 38, cmt. b (1995) (emphasis added).  *See also INS*, 248 U.S. at 250 (Brandeis, J., dissenting) ("The general rule of law is, that the noblest of human productions -- knowledge, truths ascertained, conceptions, and ideas -- become, after <u>voluntary communication to others</u>, free as the air to common use." (emphasis added)); *accord Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481 (1974) (citing Brandeis for the proposition that information and ideas in general circulation cannot be restrained by state law).

newspaper and distributed by other newspapers "only *after* plaintiff had already published its newspaper articles," there is no valid "hot news" claim. *Id.* (emphasis added).

Third, unlike in *INS*, AP does not claim that Moreover is selling AP's factual information "as its own." Rather, AP alleges that "Moreover openly claims that AP is among the sources of its "Major News Coverage" (Compl. ¶ 39), and that "Defendants represent that they receive content from various news organizations, including AP." (*Id.* at ¶ 83.) AP's incorporation of Exhibits F-J by reference in the Complaint (*e.g., id.* at ¶ 40), constitutes a further allegation that Moreover's news report search results regularly display AP bylines and link readers back to AP's original source article. (*See* Compl., Exs. F-J (*e.g.,* "NEOSHO, Mo. (AP) -- Prosecutors on Monday filed . . . .").) Accordingly, there are no "elements of imitation, of false pretense, in [Moreover's] practices . . . ." *INS*, 248 U.S. at 242. Rather, there is only honest attribution of the source of original news, through bylines and hyperlinks back to the source.

For these reasons, AP fails to sufficiently plead a claim for "hot news" misappropriation.

**C.    The Claim Is Insufficient Because AP's Allegations Establish That There Is No Free-Riding On, Nor Any Direct Competitive Threat To, AP's Primary Business.**

AP also fails to satisfy the other "extra elements" necessary to trigger the narrow exception to preemption. As the Second Circuit explained in *Motorola*, to be exempt from preemption, a "hot news" claim also must include an alleged element of "the ability of other parties to free-ride on the efforts of the plaintiff or others [to collect or generate information] would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened." *Motorola*, 105 F.3d at 845. "Free-riding" occurs when a defendant engages in the production of "a directly competitive product for less money because it has lower costs." *Id.* at 854 (emphasis added). The court further elaborated that "[s]ome authorities have labeled this element as requiring direct competition between the defendant and the plaintiff in a primary market." *Id.* at 853 n.8 (citing Restatement (Third) of Unfair Competition § 38, cmt. c (1995)) (emphasis added). Here, AP has not included and cannot include the requisite allegations.

In *Motorola*, the defendant's service involved (1) collecting facts generated by the plaintiff's efforts, (2) "the transmission of these facts on a network," (3) "the assembling of [these facts] by the [defendant's] service," and (4) "the transmission of [these facts] to . . . an on-line computer site." *Id.* at 854. The Court concluded that the defendants were "in no way free-riding" on the plaintiff's business, because the defendants "expend[ed] their own resources to collect purely factual information generated [by the plaintiff's primary business] to transmit to [the defendants' users]. They have their own network and assemble and transmit data themselves." *Id.* The *Motorola* defendant thus was not free-riding to create a directly competitive product in plaintiff's primary market.

Here, AP describes its primary business as the creation and distribution of original news. (Compl. ¶ 25.) In contrast, Moreover provides a search engine. AP does not allege that Moreover creates and distributes original news. In fact, as AP admits, Moreover is a provider of news only to the extent that it "organize[s]" and "categorize[s]" online news found "on the open Internet" and then "provid[es] links" through "Internet portals." (*See id.* at ¶¶ 34-36, 43.) To do this, Moreover expends considerable effort to comb the Internet and provides links to the news sources. (*See* Defs.' Ex. A ("Moreover intelligently categorizes news content across 500 topics to provide targeted browsing. News articles [are] analyzed and enriched with more than 30 descriptive metadata fields to enable precision filtering of millions of real-time news articles.").)

AP's own conduct acknowledges that the Moreover search engine complements, rather than competes with, AP's news reporting. AP specifically alleges that "[i]n fall 2006, AP considered retaining Moreover as a vendor to provide certain content management services to the news cooperative's members." (Compl. ¶ 55.) If Moreover's search engine were a substitute for AP's news reporting, AP would not have needed to contract with Moreover to acquire Moreover's search services. Instead, AP reports the news; the Moreover search engine -- at a cost to Moreover -- finds those reports on the Internet and points users to them. AP's claim thus does not satisfy the "free rider" or direct competitive threat elements of the exception to preemption.

# IV.    AP'S CLAIM FOR THE IMPROPER REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION FAILS TO ALLEGE NECESSARY ELEMENTS

AP's third claim for relief, the "Removal or Alteration of Copyright Management Information" ("CMI") (Compl. ¶¶ 75-80), is an infrequently litigated statutory claim that arises under the Digital Millennium Copyright Act ("DMCA"), Pub. L. No. 105-304, § 103(a), 112 Stat. 2860, 2863-64 (1998). It is codified at 17 U.S.C. § 1202(b), under a chapter entitled "Copyright Protection and Management Systems." AP alleges that the removal of "a credit line to AP" that accompanies its articles constitutes a violation of the CMI statute. (Compl. ¶ 76.) The claim fails, however, for three reasons.[9]

First, as is evidenced by the sample search results included in the Complaint, Defendants clearly do not remove the alleged AP source line from the excerpts of its articles. (*See* Compl., Exs. F-J (*e.g.*, "NEOSHO, Mo. (AP) -- Prosecutors on Monday filed . . . ." (emphasis added)).) Indeed, one of the purposes of the Moreover search engine is to provide customers with links to sources of articles that might be of interest, including by informing those customers what the source of the article is. The CMI claim thus fails, because the very facts AP includes in its Complaint contradict an element of the offense.[10]

Second, this claim fails because AP has not alleged, and cannot allege, that Defendants acted with the requisite knowledge of the _effect_ of CMI removal, another essential element of a CMI claim. Section 1202 requires knowledge that the removal of copyright management

---

[9]  AP appears to pursue this claim under the wrong statutory section. It alleges that Defendants violated Section 1202(b)(1) by removing CMI "when reproducing" AP's news articles. (Compl. ¶ 78.) However, Section 1202(b)(1) "applies only to the removal of copyright management information on a plaintiff's product or original work," and does _not_ apply to the "the absence of copyright management information from copies of Plaintiff's works . . . ." *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *rev'd on other grounds*, 336 F.3d 811 (9th Cir. 2003). The more appropriate provision in this case, which governs the removal of CMI from copies of copyrighted works, would appear to be 17 U.S.C. § 1202(b)(3). *See Arriba Soft*, 77 F. Supp. 2d at 1122. Regardless, AP fails to state a proper claim.

[10]  AP's CMI claim also is squarely at odds with its claims for trademark false association. On the one hand, AP alleges that Defendants "alter" and "remove" AP's name from news articles. On the other, AP alleges that Defendants are openly displaying its name in violation of the trademark and unfair competition laws in an effort to confuse the public as to the association of the Moreover services with AP.

information "will induce, enable, facilitate, or conceal an infringement . . . ." 17 U.S.C.

§ 1202(b).  While AP alleges that Defendants intentionally removed its CMI "with full

knowledge of" and "in conscious disregard for" AP's copyrights (Compl. ¶ 79), such an

allegation is insufficient to constitute the requisite knowledge element for this claim.  A proper

allegation must assert that the removal of the copyright information was done with knowledge

that it will conceal the alleged infringement or somehow assist in further infringement.  *See*

*Gordon v. Nextel Comm. and Mullen Adver., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003) (affirming

summary judgment for defendant where plaintiff did not show that defendant had "reason to

know that the removal would facilitate or conceal an infringement").

AP cannot assert such an allegation, however, because, as the remainder of AP's

Complaint reflects, the very purpose of the Moreover search engine is to inform its users of the

original sources of information, including AP.  Far from acting with "knowledge" that its actions

will conceal the source of the material, the Moreover search engine actively -- and properly --

attributes the sources of its search results.

Finally, AP's CMI claim fails because it does not include the requisite allegations that

would demonstrate that the "credit line to AP" in its articles constitutes valid "copyright

management information."  (Compl. ¶¶ 76-77.)  "To come within § 1202, the information

removed must function as a component of an automated copyright protection or management

system," where removal of the information would "impede[] or circumvent[] the effective

functioning" of such a system.  *IQ Group v. Wiesner Publ.*, 409 F. Supp. 2d 587, 597 (D.N.J.

2006) (emphasis added).  A mere credit line in a news article is not necessarily information

generated "by the technological measures of automated systems."  *Id.* (reviewing legislative

history and statutory construction of § 1202).  Here, AP pleads no facts to suggest that its

claimed CMI, an AP "credit line," is generated by an automated copyright protection system.

(*See* Compl. ¶¶ 58, 76-77.)  AP thus has failed to plead sufficient facts to show that any of its

information falls within the protection of Section 1202 as "copyright management information."

V.    AP'S CLAIMS OF FALSE ASSOCIATION AND ENDORSEMENT FAIL
      BECAUSE THE ALLEGED TRADEMARK IS USED PROPERLY TO IDENTIFY
      AN ASPECT OF THE MOREOVER SEARCH SERVICE

AP asserts that the Moreover search engine violates the Lanham Act by using AP's

trademark in a manner that causes consumers to be confused regarding an association with AP.

(Compl. ¶ 86 ("use of the AP name" means that consumers allegedly "are likely to wrongly

believe that Defendants' services are provided by AP, or are sponsored by, or approved by, or

licensed by, or affiliated with" plaintiff)); 15 U.S.C. § 1125(a)(1)(A) (trademark violation exists

if use "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association" of another).  But the underlying facts AP includes in the Complaint

demonstrate that this claim also fails as a matter of law.

Trademark law expressly permits "others to use a protected mark to describe aspects of

their own goods . . . ." *Car-Freshner Corp. v. S.C. Johnson & Sons, Inc.*, 70 F.3d 267, 270 (2d

Cir. 1995); 15 U.S.C. § 1115(b)(4) (no trademark violation exists where use of the mark "is a

use, otherwise than as a mark, . . . which is descriptive of and used fairly and in good faith only

to describe the goods and services").  Thus, where another's trademark is used correctly to

describe some fact about a product, there is no trademark violation.

Here, there is no dispute that the use of the alleged AP trademark correctly describes the

fact that the Moreover search service links to articles by AP and that the term "AP" is included in

the search results to identify the links as pointing to the location of an "AP" report.  (*See, e.g.,*

Compl., Exs. F-J (reflecting search results with "AP" to describe AP articles).)  Accordingly, all

the Moreover service does in using the alleged trademark is properly describe an aspect of its

search service and identify the results of its searches.  This does not constitute trademark

infringement. *See, e.g., Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 73-

74 (2d Cir. 1999) (finding no trademark infringement where defendant's database of news

- 21 -

abstracts used "Nikkei" trademark "in the manner of a footnote or bibliography" to describe accurately that plaintiff's articles were the basis for the abstracts that defendants generated).[11]

## VI.    AP'S CLAIM FOR TRESPASS TO CHATTELS FAILS TO ALLEGE THE REQUISITE ELEMENT OF ACTUAL INJURY

AP alleges that Defendants "place search robots or 'crawlers' on servers owned and operated by AP to retrieve AP's proprietary works," and that such conduct "constitutes a trespass to AP's property." (Compl. ¶¶ 101-102.) This trespass claim, however, is fatally deficient because AP has not alleged -- and apparently cannot allege -- any actual injury.

Under New York law, a plaintiff seeking to establish trespass to chattels must plead that (1) defendants "intentionally, and without justification or consent, physically interfered with the use and enjoyment of personal property in [plaintiff's] possession," and (2) that "plaintiff[] was thereby harmed." *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 299, 327 (E.D.N.Y. 2005) (quoting *School of Visual Arts v. Kuprewicz,* 771 N.Y.S.2d 804, 807 (2003)). The allegation of harm must be that of <u>actual</u> harm, not just mere apprehension that such harm <u>could</u> occur at some time in the future. *See Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 437 (2d Cir. 2004) ("[I]nterference [with a chattel] by unauthorized use or intermeddling . . . requires a showing of actual damages" (citing Restatement (Second) of Torts §§ 217(b), 218 cmt. e (1965)) (internal quotation marks omitted)); *Harper & Row,* 723 F.2d at 201 n.5 ("[L]iability for trespass to chattels exists only upon a showing of actual damage to the property interfered with."); *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 95 (1993) (finding no "reason for departing from the actual injury rule when the trespass alleged is . . . to a chattel").

---

[11] AP's state law trademark claims fail for the exact same reason that its federal Lanham Act claim fails. AP's state law trademark claim is virtually a verbatim copy of its Lanham Act claim, and thus fails to state a cognizable claim. (*Compare* Compl. ¶¶ 83-89 (Lanham Act claim), *with* ¶¶ 92-98); *see Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1283 (S.D.N.Y. 1990) (dismissing state law claim alleging misrepresentation of the source of goods because Lanham Act claim failed); *Kregos v. Assoc. Press*, 795 F. Supp. 1325, 1336 (S.D.N.Y. 1992) ("Defendants correctly note that the standards for § 43(a) claims under the Lanham Act and unfair competition claims under New York law are virtually the same.").

AP does not allege that it has been damaged by the purported trespass. The best AP apparently can do is state that the alleged trespass to its computer systems by the robots/crawlers "could consume a significant portion of the capacity of AP's computer systems and impair the operation of AP's servers and website." (Compl. ¶ 103 (emphasis added).) Indeed, AP apparently cannot even be sure that such robots/crawlers even go onto its servers, alleging this "fact" only upon information and belief. (*Id.* at ¶101.) AP's pleading "on information and belief" that Defendants' actions "could" affect their systems is fatal to its claim. This type of speculative pleading is insufficient to state a viable trespass claim. *See In re Jetblue Airways*, 379 F. Supp. 2d at 328-29 (dismissing trespass to chattels claim where plaintiffs did not allege "that the quality or value" of their chattels were "in any way diminished as a result of defendants' actions, nor [did] they allege any facts that could sustain such a showing").

## VII.  A PERMANENT INJUNCTION IS AN EQUITABLE REMEDY, NOT A CLAIM FOR RELIEF

In its purported seventh "cause of action," AP attempts to state a claim for permanent injunction. An injunction, however, "is an equitable remedy available generally in the protection or to prevent the invasion of a legal right, not a separate cause of action." *Cleveland v. Waste Mgmt of Alameda County, Inc.*, No. C-97-4348, 1999 WL 66518, *8 (N.D. Cal. Feb. 1, 1999) (emphasis added); *Air Brake Sys., Inc. v. Mineta*, 202 F. Supp. 2d 705, 715 (E.D. Mich. 2002) ("[T]he plaintiff's claim for injunctive relief is nothing more than a request for an equitable remedy that is dependent on the underlying merits of its other claims; it does not state an independent cause of action.").

Even if a permanent injunction could be stated as a separate "cause of action," AP's claim would still fail because it has not pled a single viable cause of action upon which an award for permanent injunction may be based. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed -- if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." (internal

quotation omitted)); *see also Davis v. Passman*, 442 U.S. 228, 239 (1979) ("[T]he question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive."); *id.* at 239 n.18 ("[C]ause of action is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court; and relief is a question of the various remedies a federal court may make available.").

Accordingly, AP's seventh cause of action should be dismissed.

## VIII.    AP'S COMPLAINT DOES NOT ASSERT SUFFICIENT ALLEGATIONS AGAINST VERISIGN AS A SEPARATE PARTY

AP asserts its claims against both Moreover and VeriSign, repeatedly referring to them collectively as "Defendants." However, AP's Complaint does not include any allegations of any independent activity by VeriSign -- which AP admits is a separate company from Moreover (*see* Compl. ¶ 2) -- upon which any claims can be based.

The only substantive allegation against VeriSign states that it "offers services" that, among other things, "'harvest and organize massive amounts of'" information for customers, and that such services "'include and rely upon Moreover's services.'"  (Compl. ¶ 35 (quoting http://www.verisign.com/products-services/content-messaging/real-time-publisher-services/index.html (attached hereto as Exhibit C)).)  As the materials referenced by AP reflect, however, VeriSign's "offer" for the alleged services is merely a description of the Moreover search service, which then directs customers to details about Moreover.  (*See* Defs.' Ex. C.)

Such bare allegations that do not describe any independent activity by VeriSign are insufficient to state any claim against it.  *See* Fed. R. Civ. P. 8(a)(2); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 337 (2005) (noting that a plaintiff must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests" (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981) (dismissing all claims against defendant who was "specifically mention[ed]" only in the caption and one paragraph of the complaint, which did not offer any basis "to ascertain why plaintiffs think that

[the defendant] has violated the law in some manner or acted in some fashion so as to injure plaintiffs"); *Rodriguez v. Chandler*, 641 F. Supp. 1292, 1294 n.1 (S.D.N.Y. 1986) (dismissing all claims against defendant who was mentioned only in one paragraph of the complaint, where "none of the complaint's substantive charges [were] directed against him"); *see also McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (affirming dismissal of complaint that "fail[ed] to say which wrongs were committed by which defendants").  Accordingly, the claims against VeriSign should be dismissed for this wholly independent reason.

## CONCLUSION

For all of the foregoing reasons, Defendants request that the Court dismiss the first through seventh causes of action of Plaintiff's Complaint.

Dated:  November 7, 2007

ARNOLD & PORTER LLP
JAMES B. SWIRE
LOUIS S. EDERER
ELEANOR M. LACKMAN
399 Park Avenue
New York, New York 10022-4690

RONALD L. JOHNSTON (to seek *pro hac vice* admission)
SEAN MORRIS
777 S. Figueroa Street, Suite 4400
Los Angeles, CA 90017

By: *Sean Morris / ALT*
        SEAN MORRIS

*Attorneys for Defendants*
*VeriSign, Inc. and Moreover Technologies, Inc.*